UNITED STATES BANKRUPTCY COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Kathleen and Terry Ackley, | ) | Chapter 7 |
| | ) | Case No. 09-11192 |
| Debtors | ) | |
| _____ | ) | |
| | ) | |
| Kathleen and Terry Ackley, | ) | |
| | ) | |
| Plaintiffs | ) | Adv. Proc. No. 10-1011 |
| | ) | |
| v. | ) | |
| | ) | |
| Sallie Mae Student Loans, et al., | ) | |
| | ) | |
| Defendants | ) | |
| _____ | ) | |

## MEMORANDUM OF DECISION

Kathleen and Terry Ackley seek to discharge all of their student loan obligations based upon undue hardship pursuant to 11 U.S.C. §523(a)(8). Following a day-long trial, it appeared that they might be able to pay a small portion of their student loan debt without undue hardship and that the balance would be discharged. This preliminary conclusion presented two issues: (a) whether the debtors' student loan obligations could be apportioned into dischargeable and nondischargeable claims; and, (b) if so, how such an apportionment should be accomplished. On the recommendation of counsel, the parties were invited to submit written arguments on these questions. Thoughtful memoranda were provided. However, upon my attempt to apply the law to the facts in this case, it became apparent that the payment of even a small portion of the student loan obligations would impose an undue hardship on the debtors. Thus it is my conclusion that all of the student loan obligations shall be discharged. This memorandum contains my findings of fact and conclusions of law.

## BACKGROUND

Before filing their petition for relief under chapter 7, each debtor began a degree program in social science at the University of Maine at Augusta. Each debtor obtained student loans to finance his or her education. They also became obligated on student loans for their adult children. Eventually, post-bankruptcy, each debtor earned a bachelor's degree and each began to seek employment in the social service field. Each had aspirations of becoming a guardian ad litem. Neither has been successful in securing such employment. Each said that they lack the prerequisites needed for certification as guardians ad litem and that they were not aware of these prerequisites before graduation.

At trial all parties stipulated to the following claims for pre-bankruptcy student loans:[1]

| | |
|---|---|
| Sallie Mae | $292,006.29 |
| J. P. Morgan Chase | $51,726.86 |
| PNC Bank | $12,972.51 |
| Department of Education / William D. Ford Direct Loans | $96,293.29 |
| ECMC/Great Lakes | $7,522.02 |

Neither debtor is in good health. They presented no expert medical evidence of any disabling conditions but, on personal knowledge, each gave testimony of many ailments. Mr. Ackley, who is 60, has been receiving social security disability payments since 2004. He has had both knees replaced, and suffers from pain in his hands and knees which he attributes to arthritis. Mrs. Ackley, who is 58, is employed as a legal secretary in the office of the attorney representing her in this adversary proceeding. She suffers from painful headaches, which she describes as migraines, and high blood pressure. She has problems remembering things, has had to relearn some words, and gets dizzy and falls. Last year she fell and broke her ankle in three

---

[1] All of these loans qualify for the exception to discharge under § 523 (a)(8).

places. Mrs. Ackley does not drive and is taken to and from work by her husband. She said it is difficult for her to perform her employment duties and she worries about losing her job. Mrs. Ackley regularly takes prescription drugs for her unspecified conditions. She testified that her monthly co-pay for medication is $200 and that they have accumulated over $22,000 in post-bankruptcy non-reimbursable medical expenses.[2]

Mrs. Ackley takes home about $2,300 per month after taxes. Mr. Ackley is unemployed. He testified that his ailments prevent him from being employed as he was before going to school for his social science degree. He contributes his disability payments in the amount of about $1,600 to the family's expenses. Their combined net monthly income appears to be $3,900.

The parties' joint pretrial memorandum shows the Ackleys' monthly expenses to be:

| | |
|---|---:|
| home mortgage | 1,015.99 |
| heat | 400.00 |
| electricity/gas | 250.00 |
| home maintenance | 75.00 |
| telephone | 160.00 |
| internet/cable | 115.00 |
| food | 600.00 |
| clothing | 60.00 |
| prescriptions/co-pays | 300.00 |
| Maine Eyecare | 50.00 |
| transportation | 500.00 |
| recreation | 25.00 |
| life insurance | 30.00 |
| car insurance | 85.00 |
| pet food/care | 30.00 |
| New Dimensions (boat) | 291.00 |
| total expenses | 3,986.99 |

The Ackleys do not live a lavish lifestyle, but they do apply a portion of their income to

---

[2] This amount is $100 less than the $300 for "prescriptions/co-pays" shown on the debtors' budget.

3

support their adult children. Their adult son lives in the Portland area. He is not paying the student loans cosigned by the Ackleys. Their 24 old daughter lives at home part of the time while earning her degree and does not contribute to the family's living expenses. She is likely to complete her degree in pharmacy in May of 2012 and it is anticipated that she will leave home following graduation. She uses Mrs. Ackley's car, a 2003 RAV 4 and contributes little or nothing to its upkeep. Mr. and Mrs. Ackley use a 1998 Ford Ranger. The Ackleys hope to abandon the Ranger for the RAV 4 after their daughter graduates. This should reduce their expenses for gas and vehicle maintenance. They also said that they have reduced their telephone expenses by $46 per month; however, the $114 per month they now pay for cell phone service includes one cell phone for their daughter. By eliminating her service the Ackleys anticipate that their phone bill will be about $60 per month, a savings of $100 from their budget.

  The debtors have reaffirmed the $17,000.00 secured loan on a pontoon boat, motor and trailer. Their understanding is that the value of these items roughly equals the debt. The monthly payments on this boat loan are shown as $291. They are prepared to return the boat and are optimistic that there will be no deficiency.

  The Ackleys have cut their grocery bill by $200 per month; by returning the boat and accessories they would save another $291 (assuming no deficiency); by eliminating phone service for their daughter they will save another $100; upon their daughter's departure from home they will save an unspecified amount attributable to auto expenses on the vehicle she uses. All told it appears that the debtors may be able to trim their budget by $600 or more per month.

**DISCUSSION**

A student loan is not discharged in bankruptcy "unless excepting such debt from discharge . . . would impose an undue hardship on the debtor and the debtor's dependants." 11 U.S.C. §523(a)(8). The Ackleys have the burden of demonstrating that excepting their student loans from discharge would impose an undue hardship on them.

The First Circuit Bankruptcy Appellate Panel has adopted the totality of the circumstances test to measure undue hardship. See Bronsdon v. Educational Credit Management Corp., 435 B.R. 791, 800 (1st Cir. BAP 2010). This test has been applied routinely by this court and will be applied in this instance.[3] See, e.g., Kopf v. U.S. Department of Education (In re Kopf), 245 B.R.731, 741(Bankr. D. Me. 2000). Under this test, the court will look at (1) the debtor's past, present and reasonably reliable future financial resources; (2) the debtor's and his dependent's reasonable necessary living expenses; and (3) any other relevant facts and circumstances. Bronsdon, 245 B.R. at 798.

The debtors' past employment experience shows no likelihood that their financial circumstances will change for the better before they reach retirement age. If they are able to cut their monthly expenses by $600 as predicted, that amount could be applied to their student loans. But such a conclusion would need to be based upon the forgiveness or non-payment of the accrued post-bankruptcy medical expenses in the amount of $22,000. There is nothing in the

---

[3] One or more of the defendants has expressed a preference for the so-called Brunner test. See Brunner v. New York State Higher Educ. Services Corp., 831 F.2d 395 (2nd Cir. 1987). Though I may not be compelled to adopt the totality of circumstances test as a consequence of the BAP's ruling in Bronsdon, I have elected it because, until the First Circuit rules on the question, the totality of circumstances test provides an appropriate legal framework for evaluating undue hardship. And, because the existing literature under § 523(a)(8) contains ample discussion of the two tests, I see no need to belabor the point here.

record to suggest that the collection of that debt is in process or even contemplated; but, similarly, there is nothing in the record to suggest that it has been or will be forgiven. Therefore, the $22,000 must be taken into account as a circumstance affecting the debtors' ability to pay their student loans. See, e.g., Kopf, 245 B.R. at 744-5 ("demonstrating undue hardship sufficient to obtain student loan discharge requires the debtor to demonstrate that, even with the advantage of a Chapter 7 discharge, her present circumstances and future prospects do not reasonably afford her resources to repay the student loan(s) and provide herself and her dependents with a minimal standard of living.") If $600 per month were to be applied to the satisfaction of that debt without interest, it would take at least 36 months to pay it off. At which point Mrs. Ackley would be about 61 and Mr. Ackley would be at least 63.

Although expert testimony would have been required to establish the existence of specific health conditions, see Anthony v. G.M.D. Airline Services, Inc., 17 F.3d 490, 494 (1st Cir. 1994), and none was provided in this case, the debtors' own testimony was sufficient to establish that they each suffer from many ailments. Their testimony concerning their aches, pains, and other symptoms, along with their accrued medical expenses, demonstrated that each debtor has health problems which limit their present employment prospects. See, e.g., Katz v. City Metal Co., Inc., 87 F 3d. 26, 32 (1st Cir. 1996)(medical testimony not always necessary to establish disability). It is also apparent that the debtors' self-described health conditions are age related and persistent and not likely not improve as they approach retirement age. In drawing this conclusion I am mindful of the decision of the First Circuit in Nash v. Connecticut Student Loan Foundation v. Nash (In re Nash), 446 F.3d 188, 193 (1st Cir. 2006), affirming the denial of a request for a student loan discharge. There, the 41 year old debtor with bipolar disorder failed

to show, by expert testimony, that her specific disorder would affect adversely her future employability.  Here, the debtors are 58 and 60 years old.  Having viewed them in court and having heard them describe their ailments, I am convinced without expert testimony that their personally described and objectively observable ailments will persist into the future and affect adversely their employability beyond retirement age.  See Katz, 87 F.3d at 32.

Having weighed the debtors' past, present and future financial resources, their reasonable necessary living expenses, and other relevant facts and circumstances, particularly the debtors' age and current health issues, I conclude that excepting their educational loans from discharge would impose an undue hardship on them.

A separate judgment will issue.

DATED: December 23, 2011

_____
Louis H. Kornreich
United States Bankruptcy Judge